## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-02312-SBP

JULIO CESAR HERNANDEZ GUZMAN,

        Petitioner,

v.

GEORGE VALDEZ, Acting Field Office Director of Enforcement and Removal Operations, Denver Field Office, Immigration and Customs Enforcement, in his official capacity;
MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security, in his official capacity;
TODD BLANCHE, Acting Attorney General of the United States, in his official capacity;
JUAN BALTAZAR, Warden, GEO Aurora Contract Detention Facility, in his official capacity;
UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,

        Respondents.

---

### MEMORANDUM OPINION AND ORDER

**Susan Prose, United States Magistrate Judge**

This matter is before the court on Petitioner Julio Cesar Hernandez Guzman's Petition for Writ of Habeas Corpus ("Petition") (ECF No. 1), and his Unopposed Motion to Expedite Consideration of Petition (ECF No. 12). The parties have consented to the jurisdiction of this magistrate judge to decide the matter. ECF No. 8; *see* 28 U.S.C. § 636(c)(1). Following a careful consideration of the Petition and all related briefing, including the Government's Notice of Supplemental Authority (ECF No. 13), the court now respectfully **ORDERS** that the motion to expedite is **GRANTED** and that the Petition is **GRANTED in part**.

### BACKGROUND

The following facts are drawn from the docket in this matter, including an order granting

Petitioner's application for asylum issued on January 15, 2026. ECF No. 11-1, Written Decision of the Immigration Judge, *In the Matter of Hernandez Guzman*, A-Number XXX-XXX-029[1].

Petitioner, who is a native and citizen of Cuba, is the descendent of individuals who protested the Castro regime. ECF No. 11-1 at 3. The immigration judge found that Petitioner's grandfather "was repeatedly arrested at his home, detained, interrogated, and physically harmed by government security agents," and that Petitioner's father was murdered by the Castro government when Petitioner was just five years old. *Id.* at 5. Petitioner avers, and the immigration judge found, that Petitioner followed the examples set by these men. Petitioner's protests in support of human rights, and against the Castro regime, resulted in his being arrested and beaten. *Id.* After a beating in January 2020 in which Petitioner sustained a broken finger and a broken rib, family members who resided in the United States arranged for him to enter this country without authorization, which he did on February 2, 2021. *Id.* According to documentation submitted by Petitioner, he entered the United States by crossing the border with Mexico. *See* ECF No. 1-2 at 3.

Since entering the United States, Petitioner has had two encounters with the criminal justice system. On September 3, 2024, he was arrested in Florida in Miami-Dade County on felony charges of possession of cocaine and retail theft in an amount greater than $750. *See id.* at 6; *see also* Case Information, Case No. F24018970, ECF No. 11-4. Information provided by Petitioner indicates that he reached an agreement with prosecutors to resolve that case, resulting

---

[1] The Department of Homeland Security ("DHS") has appealed that decision. Notice of Appeal from a Decision of an Immigration Judge, ECF No. 11-3. The appeal is pending as of the date of this order.

in the cocaine-possession charge being dropped and the theft charge being reduced to a level that warranted a transfer of the case to county court. ECF No. 11-4; ECF No. 11 at 7 (stating that the theft charge "was reduced to a misdemeanor petit theft offense").

In a second encounter with law enforcement officials in the United States, Petitioner was arrested on April 25, 2025, for what he characterizes as "public order crimes, larceny and resisting an officer." ECF No. 11 at 7. Those charges were pending when the immigration judge granted Petitioner's application for asylum on January 15, 2026, *see* ECF No. 11-1 at 6, and they apparently remain pending at this time. *See* ECF No. 11 at 7 (stating that "[t]he disposition of those charges could not be verified from the available records, and Respondents' Form I-213 does not identify a corresponding case number"); *see also* ECF No. 11-3 at 11 (statement by DHS in its February 6, 2026 appeal of the asylum order that the charges filed against Petitioner in April 2025 were pending at that time).

Petitioner's second arrest precipitated his current detention. According to a DHS record submitted by Petitioner, on April 25, 2025—the day of his arrest on the second criminal charges—Petitioner was interviewed by a deportation officer employed by U.S. Immigrations and Customs Enforcement ("ICE"). *See* ECF No. 1-2 at 2 (describing the interview as taking place at the Collier County Jail in Naples, Florida, on April 25, 2025). The deportation officer wrote that Petitioner was in jail at that time following his arrest on three charges: (1) grand theft - $750 - $5,000; (2) possession of an antishoplifting device; and (3) resisting a law enforcement officer without violence. *Id.* As recorded in the form generated by the deportation officer who interviewed Petitioner, it was determined that Petitioner "stated no claim to Lawful Permanent Residence or U.S. Citizenship" and that he would be transferred to ICE custody on May 27,

2025. *Id.* at 3; *cf.* ECF No. 11 at 7 (stating that Petitioner has been detained in ICE custody since May 28, 2025). Petitioner is currently detained in this District at the ICE Contract Detention Facility in Aurora, Colorado. ECF No. 1 ¶ 10.

DHS initiated proceedings to remove Petitioner on July 2, 2025, and an immigration court sustained the charges of inadmissibility. ECF No. 11-1 at 4. After that finding, on September 3, 2025, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal, requesting asylum pursuant to 8 U.S.C. § 1158 of the Immigration and Nationality Act. ECF No. 11-1 at 4. In the alternative, Petitioner sought protection under the United Nations Convention Against Torture. *See* 8 C.F.R. § 1208.18. *Id.* On January 15, 2026, Petitioner's application for asylum was granted. ECF No. 11-1. As previously noted, DHS has appealed the asylum decision, *see* ECF No. 11-4, and continues to detain Petitioner, but he has not received a bond hearing at any point during the now fifteen-month period of his detention. *See* ECF No. 1 ¶ 29 (asserting that "[t]he weight of authorities and opinions entered in this District have determined that Petitioner is at least eligible for a bond hearing as he is being detained under 8 U.S.C. § 1226(a)").

In the instant case, Petitioner raises a single claim, which he styles as alleging a "Violation of 8 U.S.C. § 1226(a)," ECF No. 1 ¶¶ 25-31, and which the court understands to raise a due process challenge to his continued detention. The matter is now fully briefed and ripe for disposition. The parties have not requested oral argument, and the court respectfully finds that no hearing is required because the issue here is "fundamentally legal in nature." *See Garcia Cortes v. Noem*, No. 25-cv-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) (declining to hold a hearing in that situation) (citing 28 U.S.C. § 2243).

**ANALYSIS**

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

In initially asserting that the Petition should be denied, the thrust of the Government's argument was that Petitioner—who had long been in the United States when he was taken into ICE custody in April 2025—is detained pursuant to 8 U.S.C. § 1225(b), which creates procedures for "inspection of applicants for admission" and mandates detention. ECF No. 10 at 3-5; *see also* 8 U.S.C. § 1225(b)(2)(A) ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."). However, as the Government acknowledges in its Notice of Supplemental Authority, *see* ECF No. 13 at 1-2, the United States Court of Appeals for the Tenth Circuit recently rejected that position, holding that § 1225(b)(2)(A) applies only at the border of the United States and not to persons already located in the interior of the country. *Santillan Quiroz v. Mullin*, --- F. 4th ---, 2026 WL 1876709, at *7 (10th Cir. June 30, 2026). Because the petitioner in *Santillan Quiroz*—like Petitioner here—was not seeking admission at the border, he could not be detained under § 1225(a)(1). *Id.* at *7. Rather, "noncitizens who

5

entered the United States and were thereafter detained in the interior of the country"—like Petitioner here—"are usually subject to [8 U.S.C.] § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." *Id.* at *5; *see also* § 1226(a). And the Tenth Circuit further ruled that, on remand after the issuance of the mandate, the district court must "order the Government to, within seven days of such order, *either* provide [the petitioner] with a bond hearing *or else* release him." *Id.* at *17 n.13 (emphasis added); *see also, e.g.*, *Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643, at *8 (D. Colo. Oct. 24, 2025) (recognizing that § 1226(a) "does not require release—it provides DHS the discretion to grant an alien release on bond").

As confirmed by the Tenth Circuit in *Santillan Quiroz*, Petitioner here is detained under § 1226. With that conclusion, all that remains for this court to determine is which of the two remedial options articulated in *Santillan Quiroz*—immediate release or a bond hearing conducted by an immigration judge—should be implemented. Petitioner presses for immediate release, ECF No. 11 at 4-5 (citing cases), but the court is not persuaded that release is the appropriate course under the particular circumstances here. A careful review of the docket reveals complexities that the court finds are insufficiently addressed by the parties. In particular, there is information showing that Petitioner has been criminally charged in two separate cases, and that some criminal charges may remain pending at this time. In light of these circumstances, which are not clearly explicated on the current record, the court concludes that an immigration judge is in the best position to assess whether Petitioner's release would pose a risk of flight or danger to the community.[2] *See, e.g.*, *Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650,

---

[2] The immigration judge who evaluated Petitioner's application for asylum did not specifically consider these questions. *See generally* ECF No. 11-3.

6

at *9 (D. Colo. Oct. 22, 2025) (finding "that an immigration judge is better suited to consider whether Petitioner poses a flight risk and a danger to the community in this instance, where there is an insufficient record before this Court"); *Briales-Zuniga v. Baltazar*, No. 25-cv-03439-NYW, 2026 WL 35227, at *4 (D. Colo. Jan. 6, 2026) (same).

The Government therefore shall provide Petitioner a bond hearing in which he shall have the opportunity to meaningfully argue for release and at which the Government will bear the burden of proof. *See Villegas-Godoy v. Baltazar*, No. 26-cv-01842-NYW, 2026 WL 1954768, at *4 (D. Colo. July 6, 2026) (finding that "due process requires that the burden of proof at the bond hearing be borne by the Government") (citing *Diaz Lopez v. Noem*, No. 25-cv-04089-NYW, 2026 WL 206220, at *5 (D. Colo. Jan. 27, 2025); *Martinez Escobar v. Baltazar*, No. 26-cv-00296-NYW, 2026 WL 503313, at *5 (D. Colo. Feb. 24, 2026); *Garcia Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1159 (D. Colo. 2026)). To carry that burden, the Government's evidentiary presentation must satisfy the "clear and convincing" standard. *See, e.g.*, *Arredondo v. Baltazar*, No. 25-cv-03040-RBJ, 2025 WL 4083607, at *4 (D. Colo. Oct. 31, 2025).

## CONCLUSION

Consistent with the foregoing, it is respectfully **ORDERED** that:

(1) The Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED in part**;

(2) Petitioner's Unopposed Motion to Expedite Consideration of Petition (ECF No. 12) is **GRANTED**;

(3) Respondents shall provide Petitioner a bond hearing under 8 U.S.C. § 1226 no later than **July 27, 2026**, at which the Government will bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is justified. **If Respondents do not**

7

**provide Petitioner a bond hearing, Petitioner must be immediately released from detention**;

and

(4) On or before **August 3, 2026**, the parties shall file a joint status report describing the results of the bond hearing and whether any additional proceedings in this matter are required.[3]

DATED: July 20, 2026                    BY THE COURT:

_____

Susan Prose
United States Magistrate Judge

---

[3] Petitioner's request for attorney's fees and costs under the Equal Access to Justice Act, *see* ECF No. 1 at 7, must be made by separate motion, supported by an affidavit and describing the requesting attorney's "qualifications and experience" and other details concerning the services rendered. *See* D.C.COLO.LCivR 54.3. The court therefore declines to address the request at this juncture.